IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
(Western Division)

| | |
|---|---|
| ELLEN DEJONG PEDERSEN, as Guardian and Conservator for BRADY DEJONG PEDERSEN,<br><br>    Plaintiff,<br><br>v.<br><br>JERRY FOXHOVEN, individually;<br>CHARLES PALMER, individually;<br>RICHARD SHULTS, individually;<br>MARK DAY, individually;<br>LYNN ALLBEE, individually;<br>BRETT LAWRENCE, individually;<br>LOUIS WRIGHT, individually;<br><br>    Defendants. | CASE NO._____<br><br><br><br><br><br>**COMPLAINT AND JURY DEMAND** |

COMES NOW the Plaintiff Ellen DeJong Pedersen as Guardian and Conservator for Brady DeJong Pedersen and for cause of action against Defendants states as follows:

## **COMMON ALLEGATIONS**

1. Brady DeJong Pedersen is a resident of Sioux Center, Sioux County, Iowa.

2. Ellen DeJong Pedersen is a resident of Sioux Center, Sioux County, Iowa and is Brady's mother.

3. On November 12, 2020, the Iowa District Court of Sioux County, GCPR020231, entered an order granting an involuntary Petition for Appointment of Guardian and Conservatorship for Brady.

4. Pursuant to the court's order, Brady's mother Ellen DeJong Pedersen was appointed as his Guardian and Conservator.

5. The court found that:

Page **1** of **10**

Case 5:20-cv-04059-KEM   Document 1   Filed 12/18/20   Page 1 of 10

> The evidence and exhibits presented clearly and convincingly shows that the decision-making capacity of the [Brady] is so impaired that the [Brady] is unable to care for [his] safety, or to provide for necessities such as food, shelter, clothing, and/or medical care without which [he] may suffer physical injury or illness. Further, that the proposed decision making capacity of [Brady] is so impaired that [he] is unable to make, communicate, and/or carry out important decision regarding management of his financial affairs . . . .

6. Despite reaching the age of majority in March 2019, Brady was under a mental illness and disability that only terminated for purposes of handling his affairs when his mother was appointed Guardian and Conservator.

7. In July 2017, Brady was adjudicated delinquent and sent to the Boys State Training School ("BSTS") in Eldora, Hardin County, Iowa.

8. At all times material hereto, the BSTS was operated by the State of Iowa through the Iowa Department of Human Services and housed boys aged 12 to 18 who had been adjudicated delinquent.

9. Brady was a resident at the BSTS until March 2019 when he reached majority age.

10. By their own report and that of the Iowa Department of Human Services, about 2/3 of boys at BSTS have a mental health issue that requires administration of psychiatric drugs.

11. During his time at the BSTS Brady was deprived of basic mental health treatment other than medication despite arriving at BSTS with several mental health diagnoses, having previously received mental health care and medication, and arriving with a psychological referral that requested ongoing counseling or psychotherapy.

12. Despite having warning signs and indications of having a traumatic background, Brady did not receive trauma-informed care.

13. Despite arriving with warning signs and indications for self-harm, a thorough assessment of Brady's self-harm risk or behavior was not done and this behavior was not adequately addressed.

14. During his time at the BSTS Brady was subjected to excessive confinement in solitary rooms akin, if not identical, to solitary confinement cells for adult prisoners.

15. Said rooms were part of the school's Behavioral Stabilization Unit ("BSU").

16. Rooms in the BSU ranged from isolation rooms with a concrete slab with mattress, concrete stool, concrete desk, plastic shelving, and a jail house sink-toilet combo to seclusion rooms with no windows, no shelving, no desk, no stool, and no mattress pad. The seclusion rooms did not allow any belongings, books, or other materials.

17. Brady was routinely subjected to discipline involving isolation and seclusion rooms, at times for behavior that did not pose a risk of safety to staff or students but simply for punitive purposes.

18. In his first month at BSTS Brady was admitted to the BSU four times. Brady was admitted to the BSU over 200 times in total.

19. Brady was confined to the seclusion room 15 times between his initial admission and May 2018.

20. Despite having multiple physical health issues, including heart and liver conditions, medical warnings were ignored and medical complications were not accounted for when Brady was disciplined at the BSTS.

21. Specifically, Brady was placed in a punitive restraint device called the "wrap."

22. The wrap is a 14-point restraint device that straps a child to a bed with various straps.

23. Brady was subjected to the wrap multiple times despite his doctor's warnings against any restraints that would put pressure on his chest. Such pressure could have caused fatal side effects from both his heart and liver conditions.

24. Brady was put in the wrap at least four times in one year.

25. On at least one occasion, Brady was stripped of his clothing or had his clothing cut off him with a box cutter by BSTS staff. He was then physically and forcefully placed into the wrap while nude and left there.

26. Lastly, as a result of inadequate supervision Brady was physically and sexually abused at the hands of other students at the BSTS.

27. Excessive use of isolation and seclusion rooms against Brady constituted excessive force, cruel and unusual punishment, and deprivation of his bodily integrity in violation of the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States, especially in light of these acts being done for merely punitive purposes.

28. Especially given Brady's medical conditions, any use of the wrap constituted excessive force, cruel and unusual punishment, and deprivation of his bodily integrity in violation of the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

29. Cutting off the clothes of Brady, a child, with a box cutter and strapping him to a bed while nude constituted excessive force, cruel and unusual punishment, and deprivation of his bodily integrity in violation of the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

30. Depriving Brady of appropriate mental health treatment constituted cruel and unusual punishment and deprivation of his bodily integrity in violation of the Eighth and Fourteenth Amendments to the Constitution of the United States.

31. Factual findings and conclusions regarding these violations were recently addressed by The Honorable Judge Stephanie M. Rose in *C.P.X. through S.P.X. v. Garcia*, 450 F.Supp.3d 845 (S.D. Iowa 2020). The opinion provides additional facts and findings of constitutional violations relative to Brady, who is referred to therein as *C.P.X.*

32. As a result of the aforementioned constitutional violations, Brady has suffered severe personal and mental injuries and damages, to-wit:

   a. Past mental and physical pain and suffering;

   b. Future mental and physical pain and suffering;

   c. Past loss of full mind and body;

   d. Future loss of full mind and body;

   e. Past medical expenses;

   f. Future medical expenses.

## JURISDICTION

33. Plaintiff's claims are brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations, by Defendants, of Brady's rights guaranteed by the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

34. Jurisdiction is proper in this court under 28 U.S.C. §§ 1343(a)(3) and 1331.

## DEFENDANT PARTIES

35. Defendant Jerry Foxhoven is a resident of Des Moines, Polk County, Iowa. Defendant Foxhoven was the Director of the Iowa Department of Human Services from June

2017 until Brady left the BSTS, during which time he had supervisory and management duties over the BSTS and its staff.

36. Defendant Charles Palmer is a resident of Des Moines, Polk County, Iowa. Defendant Palmer was the Director of the Iowa Department of Human Services from the time Brady entered the BSTS until June 2017, during which time he had supervisory and management duties over the BSTS and its staff.

37. Defendant Richard Shults is a resident of Topeka, Shawnee County, Nebraska. Defendant Shults was the Iowa Mental Health and Disability Services Division Administrator during Brady's time at the BSTS, during which time he has supervisory and management duties over the BSTS and certain staff.

38. Defendant Mark Day is a resident of Holland, Grundy County, Iowa. Defendant Day was the Superintendent of the BSTS during Brady's time there, during which time he had supervisory and management duties over all BSTS staff and caretaking duties for boys, including but not limited to Brady.

39. Defendant Lynn Allbee is a resident of Eldora, Hardin County, Iowa. Defendant Allbee was the Treatment Program Administrator during Brady's time at the BSTS, during which time she had supervisory and management duties over the BSTS and certain staff and caretaking duties for boys, including but not limited to Brady.

40. Defendant Brett Lawrence is a resident of Eldora, Hardin County, Iowa. Defendant Lawrence was the Treatment Services Director during Brady's time at the BSTS, during which time he had supervisory and management duties over the BSTS and certain staff and caretaking duties for boys, including but not limited to Brady.

41. Defendant Louis Wright is a resident of Eldora, Hardin County, Iowa. Defendant Wright was a staff member of the BSTS providing psychological services during Brady's time at the BSTS, during which time he had supervisory and management duties over the BSTS and certain staff and caretaking duties for boys, including but not limited to Brady.

**COUNT I—VIOLATION OF THE EIGTH AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. §1983 AGAINST ALL DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES**

42. Plaintiff repleads paragraphs 1-41 of this Complaint as though fully set forth and incorporated in this Count I.

43. At all times material hereto, Defendants acted under color of State law which established the BSTS and placed them into positions of power over the boys at the BSTS.

44. The Eighth Amendment to the United States Constitution guarantees Brady's right to be free from cruel and unusual punishment including the use of excessive force against him from those acting under color of law, such as Defendants.

45. Defendants were vested with control over the custody and care of Brady and acted by virtue of state law and his delinquency adjudication.

46. Defendants violated Brady's constitutional rights through the excessive use of isolation and seclusion rooms, use of the wrap, use of excessive force in restraining and meting out discipline, and deprivation of adequate mental health treatment.

47. Through violation of Brady's constitutional rights under color of law, Defendants, as individuals, have violated 42 U.S.C. § 1983 and are liable for the damages alleged herein and *infra*.

48. Defendants' actions were in willful and wanton disregard for the rights and safety of Brady.

49. Defendants' actions caused actual damage to Brady as alleged herein and *infra*.

50. Punitive damages are warranted to discourage the same or similar actors from the same or similar conduct alleged herein.

WHEREFORE, Plaintiff prays for judgment against Defendants for compensatory damages in a fair and reasonable amount and punitive damages to deter Defendants or others from the same or similar conduct, plus interest as allowed by law, for attorney fees pursuant to 42 U.S.C. § 1988, and the costs of this action.

**COUNT II—VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. §1983 AGAINST ALL DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES**

51. Plaintiff repleads paragraphs 1-41 of this Complaint as though fully set forth and incorporated in this Count II.

52. At all times material hereto, Defendants acted under color of State law which established the BSTS and placed them into positions of power over the boys at the BSTS.

53. The Fourth and Fourteenth Amendments to the United States Constitution guarantee Brady's right to be free from the use of excessive force, excessive force in restraint, and deprivation of his bodily integrity and liberty by those acting under color of law, such as Defendants.

54. Defendants were vested with control over the custody and care of Brady by virtue of state law and his delinquency adjudication.

55. Defendants violated Brady's constitutional rights through the excessive use of isolation and seclusion rooms, use of the wrap, use of excessive force in restraining and meting out discipline, and deprivation of adequate mental health treatment.

56. Through violation of Brady's constitutional rights under color of law, Defendants, as individuals, have violated 42 U.S.C. § 1983 and are liable for the damages alleged herein and *infra*.

57. Defendants' actions were in willful and wanton disregard for the rights and safety of Brady.

58. Defendants' actions caused actual damage to Brady as alleged herein and *infra*.

59. Punitive damages are warranted to discourage the same or similar actors from the same or similar conduct alleged herein.

WHEREFORE, Plaintiff prays for judgment against Defendants for compensatory damages in a fair and reasonable amount and punitive damages to deter Defendants or others from the same or similar conduct, plus interest as allowed by law, for attorney fees pursuant to 42 U.S.C. § 1988, and the costs of this action.

**COUNT III—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS INDIVIDUALLY**

1. Plaintiff repleads paragraphs 1-59 of this Complaint as though fully set forth and incorporated in this Count III.

2. Defendants' confinement, restraint, treatment, lack of treatment, punishment, and excessive force are outrageous and so extreme as to cross all possible bounds of decency such that a reasonable person would regard them as atrocious and utterly intolerable in a civilized community.

3. Defendants intended their acts to cause Brady's claimed damages which include his claimed severe and extreme emotional distress or acted in reckless and wanton disregard for the probability of causing the damage.

4. Many of Defendants acts were perpetrated without justification and were done for purely punitive reasons with actual malice toward Brady and the willful, wanton, and deliberate disregard for Brady's rights such that punitive damages are warranted.

5. Brady has suffered actual physical injury as well as severe and extreme emotional distress as a result of Defendants' conduct.

WHEREFORE, Plaintiff prays for judgment against Defendants for compensatory damages in a fair and reasonable amount and punitive damages to deter Defendants or others from the same or similar conduct, plus interest as allowed by law, for attorney fees pursuant to 42 U.S.C. § 1988, and the costs of this action.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues in this case so triable.

BALL, KIRK & HOLM, P.C.

By: /s/Eashaan Vajpeyi
    H. Daniel Holm, Jr., #AT0003607
    Eashaan Vajpeyi, #AT0011094
    3324 Kimball Avenue
    P.O. Box 2696
    Waterloo, Iowa 50704-2696
    Phone: (319) 234-2638
    Fax: (319) 234-2237
    Email: Bkh@ballkirkholm.com
           Evajpeyi@ballkirkholm.com